UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>– against –<br><br>OSCAR ALPHONSO ROSARIO-BAUTISTA,<br><br>　　　　　　　　　　Defendant. | **OPINION AND ORDER**<br>18 Cr. 009 (ER) |

RAMOS, D.J.:

　　Oscar Alphonso Rosario-Bautista is currently serving a 120-month sentence. Pending before the Court is Rosario-Bautista's motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A). Doc. 53. For the following reasons, the motion is GRANTED.

## I.　BACKGROUND

### A. Prior Proceedings

　　Rosario-Bautista is a citizen of the Dominican Republic. Doc. 43 at 2. Rosario-Bautista suffers from polycystic kidney disease, which is a chronic, degenerative genetic kidney disorder. *Id.* ¶ 63; *see also* Doc. 58 at 1. More specifically, Rosario-Bautista suffers from a form of the disorder known as Autosomal Dominant Polycystic Kidney Disease, which the National Institute of Health describes as "a genetic disorder characterized by the growth of numerous cysts in the kidneys. Symptoms vary in severity and age of onset, but usually develop between the ages of 30 and 40." National Institutes of Health, *Autosomal Dominant Polycystic Kidney Disease*, https://rarediseases.info.nih.gov/diseases/10413/autosomal-dominant-polycystic-kidney-disease/. Rosario-Bautista is currently 35 years old. *See* Doc. 43 at 2. Moreover, the National Institute of Health also notes that Rosario-Bautista's version of the disease "is a

progressive disease and symptoms tend to get worse over time." National Institutes of Health, *Autosomal Dominant Polycystic Kidney Disease*, https://rarediseases.info.nih.gov/diseases/10413/autosomal-dominant-polycystic-kidney-disease/.  These cysts make the kidneys much larger than they should be, damage the tissue that the kidneys are made of, and can lead to kidney failure.  Mayo Clinic, *Polycystic Kidney Disease*, https://www.mayoclinic.org/diseases-conditions/polycystic-kidney-disease/symptoms-causes/syc-20352820.  Long term, transplant is the most effective treatment, and prior to dialysis and transplant, ongoing intervention is necessary, including a diet low in salt and sugar and high in fiber, and at least 30 minutes of exercise per day.  American Kidney Fund, *Polycystic Kidney Disease (PKD) Symptoms, Treatments, & Causes*, https://www.kidneyfund.org/kidney-disease/other-kidney-conditions/polycystic-kidney-disease.html.

In 2008, Rosario-Bautista was convicted in the District of Massachusetts for conspiracy to distribute 500 grams of cocaine, in violation of 21 U.S.C. §§ 846 and 841(b)(1)(B).  Docs. 43 ¶ 11 and 55 at 1.  He was sentenced to 60 months' imprisonment.  In November 2011, after serving his sentence, Rosario-Bautista was removed to the Dominican Republic.  *Id.*

Sometime thereafter, Rosario-Bautista illegally reentered the United States.  In July 2017, Rosario-Bautista sold a sample of narcotics to an undercover agent (the "July Sale").  Doc. 55 at 1.  In August 2017, Rosario-Bautista was arrested in the Southern District of New York during a sting operation in which he attempted to sell 3 kilograms of mixtures and substances containing fentanyl to an undercover agent (the "August Sale").  *Id.*  On January 5, 2018, Rosario-Bautista was charged in a three-count indictment.  Doc. 12.  Count One charged Rosario-Bautista with knowingly distributing and possessing with intent to distribute 400 grams and more of mixtures and substances containing a detectable amount of fentanyl, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A)—a charge that was brought in connection with the August Sale; Count Two

charged Rosario-Bautista with knowingly distributing and possessing with intent to distribute mixtures and substances containing a detectable amount of fentanyl, in violation of 21 U.S.C. §§ 812, 841(a)(1), and 841(b)(C)—which was charged in connection with the July Sample Sale; and Count Three charged Rosario-Bautista with illegal reentry in violation of 8 U.S.C. § 1326(a) and (b)(2).  *Id.*  On February 26, 2019 Rosario-Bautista pleaded guilty to all three counts in the Indictment, pursuant to a written plea agreement.  On September 4, 2019, the Court sentenced Rosario-Bautista to 120 months' imprisonment for the August and July Sales, and 24 months on the illegal reentry charge, with all sentences to run concurrently.  Doc. 52.  The Court also imposed a five-year term of supervised release on Count One and a three-year term on Counts Two and Three—with all counts to run concurrently.  *Id.* at 3.

Rosario-Bautista is currently serving his sentence at Moshannon Valley Correctional Center in Philipsburg, Pennsylvania, with a projected release date of February 7, 2026.  Doc. 55 at 2.  Rosario-Bautista has served approximately 49 months of his 120-month sentence.

### B. Rosario-Bautista's Motion

On February 5, 2021, Rosario-Bautista, pro se, filed his motion for compassionate release. Doc. 53.  On April 26, 2021, through counsel appointed pursuant to the Criminal Justice Act, Rosario-Bautista filed a supplement to his application.  Doc. 58.  The Government concedes that Rosario-Bautista has exhausted his administrative remedies in connection with the instant motion.  Doc. 55 at 3.  Accordingly, the motion is ripe for adjudication.  *See* 18 U.S.C. § 3582(c)(1)(A).

In his briefing, Rosario-Bautista argues, first, that there are extraordinary and compelling reasons to warrant a reduction in his sentence, given the life-threatening condition of his polycystic kidney disease and the increased likelihood that he could develop severe illness if he contracted COVID-19.  Second, Rosario-Bautista argues that the section 3553(a) factors support granting compassionate release.  Rosario-Bautista

3

notes that lockdown during the pandemic has made incarceration harsher and more punitive than it would have otherwise been, especially in light of the fact that his medical condition requires regular exercise and a specific dietary plan to prevent his health from deteriorating more rapidly. Moreover, he notes that he has attempted to seek treatment while in prison but has suffered debilitating side effects from the medication given to him. Rosario-Bautista emphasizes that he will ultimately require a kidney transplant; while he currently lacks access to a transplant, he does have access to a transplant in the Dominican Republic, where his brother is a nephrologist and can provide him with care to stave off debilitating side effects and ultimately treat his condition. To that end, although subject to an immigration detainer,[1] Rosario-Bautista represents that he would return to his home country voluntarily should he be subject to prolonged immigration detention, and that his brother will house and support him upon his return to the Dominican Republic. Moreover, Rosario-Bautista notes that he has made several efforts to rehabilitate himself, such as through teaching others and joining the suicide prevention team.

The Government does not contest that, given his polycystic kidney disease, Rosario-Bautista has established extraordinary and compelling reasons to warrant his release. However, the Government argues that the section 3553(a) factors strongly weigh against reducing Rosario-Bautista's sentence. The Government emphasizes Rosario-Bautista's immigration detainer, noting that even if he were released from prison, he would very likely be remanded directly into U.S. Immigration and Customs Enforcement ("ICE") custody for removal proceedings. Further, the Government notes that Rosario-

---

[1] "An immigration detainer is the instrument by which federal authorities formally 'advise another law enforcement agency that they seek custody of an alien presently in the custody of that agency, for the purpose of arresting and removing the alien,'" which "generally requests the agency then having custody of the alien . . . provide federal authorities with advance notice of the alien's intended release date or to detain the alien for a brief time to allow federal authorities to assume custody." *See New York v. Dep't of Just.*, 951 F.3d 84, 97 n.10 (2d Cir. 2020) (alterations omitted) (quoting 8 C.F.R. § 287.7(a)).

Bautista has been previously imprisoned. Additionally, the Government emphasizes the nature of Rosario-Bautista's crimes, noting that he had been convicted of distributing fentanyl, and points to the fact that he has served less than half of his sentence.

## II.  DISCUSSION

### A. Legal Standard

Although a court may not normally "modify a term of imprisonment once it has been imposed," there are certain limited exceptions, including "compassionate release." *See United States v. Roberts*, No. 18 Cr. 528 (JMF), 2020 WL 1700032, at *1 (S.D.N.Y. Apr. 8, 2020) (internal quotation omitted). Under 18 U.S.C. § 1382, a court may reduce a prisoner's sentence when it finds that there are "extraordinary and compelling reasons" that warrant such a reduction, but one of two conditions must first occur: either the Bureau of Prisons ("BOP") Director may move the court to release the prisoner or, alternatively, the prisoner himself may move the court—but only after he has fully exhausted all administrative rights. *See* 18 U.S.C. § 3582(c)(1)(A).

Prior to the First Step Act, sole authority rested with the BOP to determine what reasons, for the purposes of compassionate release, are "extraordinary and compelling." *See* U.S.S.G. § 1B1.13 ("BOP Policy Statement"), Application Note 1(D). The BOP Policy Statement includes as an "extraordinary and compelling reason" the existence of "a serious physical or medical condition . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." *Id.* cmt. 1(A)(ii)(I). It also permits the Court to consider whether the incarcerated person "is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." *Id.* § 1B1.13(2). However, the Second Circuit in *United States v. Brooker* recently held that the First Step Act also "freed district courts to consider the full slate of extraordinary and compelling reasons that an imprisoned person might bring before them in motions for compassionate release." *See* 976 F.3d 228, 237 (2d Cir. 2020).

If the sentencing court finds that "extraordinary and compelling reasons" exist, it "may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable."  18 U.S.C. § 3582(c)(1)(A).  These factors include the nature and circumstances of the offense, the history and characteristics of the defendant, the need for the sentence imposed, and the need to avoid unwarranted sentence disparities.  18 U.S.C. § 3553(a).

### B. Analysis

As noted, the Government does not contest that Rosario-Bautista's medical condition presents extraordinary and compelling circumstances that render him potentially eligible for compassionate release.  Indeed, Rosario-Bautista has a deteriorating medical condition for which the only viable treatment is a transplant, and as noted, early intervention is key.  Moreover, and especially in light of the now-dominant Delta variant, Rosario-Bautista still faces the threat of COVID-19 in prison, *see United States v. Pacheco*, No. 12 Cr. 408 (JMF), 2020 WL 4350257, at *1 (S.D.N.Y. July 29, 2020), and suffers from a medical condition that increases the likelihood that he develops severe illness if infected, *see* Centers for Disease Control and Prevention, *People with Certain Medical Conditions*, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html.  Moreover, whether he has already suffered from COVID-19 before or has been vaccinated, Rosario-Bautista still maintains a heightened risk of contracting COVID-19, given the immunocompromised status of those with chronic kidney disease.  Y. Hou, et al., *The Efficacy of Covid-19 Vaccines in Chronic Kidney Disease and Kidney Transplantation Patients:  A Narrative Review*, https://www.ncbi.nlm.nih.gov/pmc/articles/PMC8402591/; *see also United States v. El Gammal*, No. 15 Cr. 588 (ER), 2021 WL 1573929, at *3 (S.D.N.Y. Apr. 22, 2021).

Accordingly, the Court agrees that Rosario-Bautista has established that extraordinary and compelling reasons warrant his release.

The Court also concludes that a reduction of Rosario-Bautista's prison term will result in a sentence that is sufficient to achieve the purposes of sentencing set forth in section 3553(a). Rosario-Bautista's crimes, which involved the distribution of narcotics, are undoubtedly serious, but the Court finds that a reduction of his sentence to time served in no way diminishes the seriousness of the offenses or undermines the respect for the rule of law, and doing so will provide for adequate deterrence. Rosario-Bautista has no history of violence, and has demonstrated significant progress towards rehabilitation. *See United States v. Rodriguez*, 492 F. Supp. 3d 306, 314 (S.D.N.Y. 2020).

More significantly, Rosario-Bautista's medical condition counsels in favor of his release. For someone of Rosario-Bautista's "health profile, the risk of suffering severe health consequences if he contracts COVID-19, coupled [with] the severe conditions imposed by the concomitant lockdowns and restrictions that [were] necessary to ensure [Rosario-Bautista's] safety, means that the actual severity of [his] sentence as a result of the [pandemic] exceeds what the Court anticipated at the time of sentencing." *Id.* at 311 (quotation omitted). That effect is compounded given the nature of Rosario-Bautista's condition and the need for early intervention for his treatment. But in prison, and especially during pandemic-related lockdowns, Rosario-Bautista's kidneys have deteriorated significantly despite his attempts to seek treatment, and he lacks a viable transplant opportunity. By contrast, if released, he will not only be able to obtain a transplant, but he will have access to medical care through his brother, a nephrologist in the Dominican Republic who concentrates in the treatment of kidney disorders.

Relatedly, the fact that Rosario-Bautista "is reportedly subject to a detainer from [ICE] does not alter the Court's decision to grant the motion." *United States v. Beras*, No. 99 Cr. 75 (RA), 2020 WL 7496354, at *3 (S.D.N.Y. Dec. 20, 2020). Indeed, several courts in this District have granted compassionate release motions despite "the likelihood

7

that the defendant would be either released to ICE custody or promptly removed from the United States." *Id.* And notably, Rosario-Bautista emphasizes that the risk of serious illness within the prison and the absence of a viable transplant opportunity far outweigh the risk of illness by returning to the Dominican Republic for life-saving treatment. Doc. 58 at 5. Accordingly, the Court is persuaded that a reduction in sentence is warranted. *See Beras*, 2020 WL 7496354, at *3.

### III. CONCLUSION

For the foregoing reasons, Rosario-Bautista's motion for compassionate release is GRANTED. Rosario-Bautista's previously imposed prison sentence is hereby reduced to time served. The Court also stays this order for ten days to allow the Bureau of Prisons to make any necessary arrangements for Rosario-Bautista's release. In the event that Rosario-Bautista is released to the community rather than held by immigration authorities, he shall upon release begin his five-year term of supervised release. The Clerk of Court is respectfully directed to terminate the motion. Doc. 53.

It is SO ORDERED.

Dated:   September 10, 2021
         New York, New York

EDGARDO RAMOS, U.S.D.J.